## CIVIL SERVICE COMMISSION OF THE CITY OF BRIDGEPORT
### vs.
## BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT, ET AL.

Superior Court          Fairfield County          File #54248

Present: Hon. JOHN RUFUS BOOTH, Judge.

Harry Schwartz,                    Attorney for the Plaintiff.

William Comley,                    Attorney for the Defendants.

**MEMORANDUM FILED DECEMBER 31, 1937.**

BOOTH, J. The present suit is brought by the Civil Service Commission against the members of the Board of Education and three individuals, being Anna Cain, Gertrude Fitz-

Patrick and Minnie C. Kelsey, all of the City of Bridgeport, in which it is sought to test the right of the three last named defendants to hold positions as principals of elementary schools in said city to which they were appointed by vote of the Board of Education on October 30, 1937 without competitive examination. Specifically, the complaint seeks a declaratory judgment determining this question and other equitable relief if appropriate.

The answer raises no substantial question of fact, the real essence of this controversy being the construction of the so-called Civil Service Act approved June 5, 1935, known as "An Act Amending the Charter of the City of Bridgeport by Establishing a Civil Service Commission", and numbered 407 of the Special Acts of 1935. In addition to the answer a cross-complaint also prays a declaratory judgment establishing the status of the defendants, Cain, FitzPatrick and Kelsey, according to their claims.

Each of these three teachers was concededly a member of the classified service under the provisions of the Act, before her appointment under the aforesaid vote of the Board of Education. It is equally clear that the positions to which they were thus appointed are those of teachers in the elementary system of the city. The real question decisive of this matter is whether the action of the Board of Education amounted to a promotion within the definition of the Civil Service Act or is an appointment to the elementary school system of the City of Bridgeport. If it is the former the Court will be called upon to construe the whole Act in an effort to determine what if any of its provisions apply to the promotion of teachers within the elementary system. If the latter, section 3(e) of the Act removes from its operation the action of the Board of Education and the positions held by the named teachers. This exemption is in the following language:

"The unclassified service shall comprise . . . (e) teachers in the elementary system of the city, so far as their appointments thereto are concerned . . ."

In reference to this class of service no examinations are provided for or required by the Act and, indeed, the theory of the Act is in no way to regulate or control such service. This is quite apart from the obvious intent embodied in the oft-repeated exemption of teachers in all branches of the school system, whether within the classified service or not, from the

machinery therein set up for the appointment, testing, rating, classification and compensation of employees. There may be some significance attaching to the failure of the Act to exclude promotions from these exceptions although even here it might be difficult to clearly determine in view of section 4(2) of the Act that promotions were not fairly within the broad powers granted to the Board of Education by the following language:

"The classification, rating, assignment, transfer and compensation of teachers shall remain under the control of the board of education, anything contained in this act to the contrary notwithstanding . . ."

But this problem is beside the point in view of the conclusion of the Court that the legal effect of the vote of the Board of Education was not a promotion but an appointment within the meaning of section 3(e) quoted above. Section 24 defines a promotion as follows:

"A change from one class of position to another class of position having a higher rate of compensation and involving a change of duties and responsibilities and requiring a competitive civil service examination . . ."

The class of position to which these teachers acceded was to that of teachers in the elementary system. They were not a part of this system at the time of the aforesaid vote of the Board of Education and, so far as the Act is concerned, were in no different position than they would have been had they never taught in the school system of the city. It cannot be contended under section 3(e) that as such they would be within the unclassified service.

It is, therefore, found that they were appointed to such system and were not required to compete under the provisions of the Act for such appointments. This construction accords more nearly to the intent running throughout the Act to keep the management and control of the teaching force within the Board of Education, a body selected and presumably qualified to represent the paramount interests of the State in the specific field of education. It is not inferred, however, that certain provisions of the Act designed to accord to employees, no matter what their field of activity may be, the protection of those provisions having to do with tenure of office, seniority, etc., but this question is not before the Court for determination. Recognition is, however, given by the Act to those intangible values which may in some instances not be discernible

from competitive examinations, but which are of such infinite importance in the successful operation of a system of primary education.

In view of the foregoing, it is found that the defendants Cain, FitzPatrick and Kelsey lawfully hold the positions to which they were appointed by the action of the Board of Education and that the action of said Board in making such appointments was lawful and valid.

Judgment for the defendants may accordingly be entered upon the issues of the complaint and cross-complaint.